**In re COACHLIGHT DINNER THEATRE OF NANUET, INC., Debtor.**

**Bankruptcy No. 81 B 20013.**

United States Bankruptcy Court, S. D. New York.

Feb. 4, 1981.

Glickman & McAlevey, New City, N.Y., for Rockland Broadcasters/Radio Station WRKL.

Russo, Lombardi & Frucco, White Plains, N.Y., for debtor.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Radio Station WRKL operating in Rockland County, New York, refused to accept the debtor's advertising, notwithstanding an offer of cash in advance, unless it is also permitted to include a disclaimer indicating that the debtor has filed under Chapter 11 of the Bankruptcy Code. The debtor owns and operates a dinner theatre in Rockland County which holds theatrical events, such as revivals of Broadway shows, at the theatre. The debtor seeks to compel the radio station to accept its advertising on a cash in advance basis without any disclaimer as to the debtor's status under Chapter 11.

The debtor reasons that advertising is as important to a debtor engaged in the presentation of theatrical shows as the electricity and heat provided by the public utilities. An inability to obtain advertising is as fatal to this debtor as pulling the plug for electricity; in either event the curtain will fall and the debtor's attempted rehabilitation under Chapter 11 will be marked "finis".

On the other hand, the radio station takes the position that it has a legitimate economic self-interest in limiting the kinds of advertising it will accept, since in the minds of its listening audience, a radio station's advertising may be every bit as reflective of the quality of its programs as the programs themselves. The radio station takes the position that it is also acting in the public interest because it has a duty to inform the public and to strengthen its own reputation for integrity in the small community it serves. Thus, the radio station suggests that there is no guarantee that either the Coachlight Dinner Theatre production will produce a play at the appointed time, or that the ticket price will be refunded if the debtor's show does not go on.

It is obvious that any radio advertising that also carries with it a disclaimer because of the debtor's Chapter 11 petition is as welcome as Banquo's ghost; it will not bode well for the debtor. It should be noted that there is no evidence that the station's insistence upon the disclaimer is prompted by the fact that it is an unsecured creditor for unpaid commercials that were broadcast before the commencement of this case. However, it cannot be doubted that this fact may have something to do with its reluctance to deal with this debtor. Suffice it to say that the debtor neither alleges, nor is there any proof, that the radio station's recognition of its duty to inform its listening public as to the debtor's Chapter 11 petition is designed as a ploy to obtain a preferential payment for unpaid prepetition commercials. Hence, the issue is framed in terms of whether or not a radio station may refuse to accept advertising from this Chapter 11 debtor on a cash in advance basis without inserting disclaimers as to the debtor's financial condition, when the radio station does not impose such disclaimers as to its other customers.

■ That this debtor has sought relief under Chapter 11 of the Bankruptcy Code does not mean that it is entitled to any more protection that an entity who has not sought such relief. The radio station is a private entity and cannot be regarded as a governmental unit under Code § 525, which affords protection against discriminatory treatment by a governmental unit. In *C.B.S. v. Democratic National Committee*, 412 U.S. 94, 93 S.Ct. 2080, 36 L.Ed.2d 772

(1973), in upholding a broadcast station's right to refuse to sell editorial advertising time to individuals or groups wishing to speak out on the Viet Nam war issue, the United States Supreme Court noted that the electronic media was a private enterprise with a large measure of journalistic freedom, subject to its statutory duties to provide balanced coverage of issues and events. Thus, the radio station's activities are neither those of the government nor is the station engaged in a "symbiotic relationship" with the government. The radio station's refusal to provide paid political time was not treated as governmental action. It was viewed instead in the context of private independent journalism, subject to federal regulations and the concept of the First Amendment right of free speech. Thus, the Supreme Court reversed the Court of Appeals' decision imposing a constitutional right of access on the broadcast media. The Court of Appeals based its decision on the theory that the broadcast media impermissibly discriminated by accepting commercial advertisements while refusing editorial advertisements.

■ Since private broadcasters are not regarded as government, it follows that First Amendment considerations are not involved because the First Amendment protects the press *from* government interference. To impose a limited right of access on broadcasters in the name of the First Amendment would turn broadcasters into common carriers or public utilities and strip them of their own First Amendment rights. Since the United States Supreme Court in *C.B.S. v. Democratic National Committee,* supra, has refused to create a constitutionally guaranteed right of access in favor of the listening public, this court will not now do so within the framework of the Bankruptcy Code.

■ Indeed, Code § 366, which deals with the discontinuance of public utility service, is not at issue here. The debtor's offer of cash in advance as adequate security will manifestly protect the radio station's purse, but it will not satisfy the station's asserted responsibility to its listening audience. In

the light of the *C.B.S.* case it is clear that a radio station may legitimately protect its pecuniary interests by exercising discretion as to which commercials or advertising it will accept, subject to a loss of its license if such discretion is misused.

That there is no constitutionally guaranteed right of access to the media was reiterated by the United States Supreme Court in connection with newspapers and publishers in *Miami Herald v. Tornillo,* 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974) where the court said: (p. 257)

> "A newspaper is more than a passive receptacle or conduit for news, comment *and advertising.* The choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials—whether fair or unfair—constitute the exercise of *editorial control and judgment.* It has yet to be demonstrated how governmental regulation of this crucial process can be exercised consistent with First Amendment guarantees of a free press as they have evolved to this time." [Footnote omitted and emphasis added]

See also, *Person v. New York Post,* 427 F.Supp. 1297, 1301–02 (E.D.N.Y.1977), affd. 573 F.2d 1294 (2d Cir. 1977).

The law in the State of New York is not otherwise. Thus, in *Locker v. American Tobacco Co.,* 121 App.Div. 443, 451–452, 106 N.Y.S. 115, affd. 195 N.Y. 565, 88 N.E. 289 the court held:

> "the well-settled law of this State that the refusal to maintain trade relations with any individual is an inherent right which every person may exercise lawfully, for reasons he deems sufficient or for no reasons whatever, and it is immaterial whether such refusal is based upon reason or is the result of mere caprice, prejudice or malice. It is a part of the liberty of action which the Constitutions, State and Federal, guarantee to the citizen."

Similarly, in *Poughkeepsie Buying Service, Inc. v. Poughkeepsie Newspapers,* 205 Misc. 982, 985, 131 N.Y.S.2d 515 (Sup.Ct. Orange Co. 1954), the rule was stated as follows:

"the newspaper business is in the nature of a private enterprise and that, in the absence of valid statutory regulation to the contrary, the publishers of a newspaper have the general right either to publish or reject a commercial advertisement tendered to them. Their reasons for rejecting a proposed advertisement are immaterial, assuming, of course, there are absent factual allegations connecting them with a duly pleaded fraudulent conspiracy or with furthering an unlawful monopoly."

In the light of the foregoing, the debtor's application to compel Radio Station WRKL to accept the debtor's advertising on a cash in advance basis is denied.

IT IS SO ORDERED.