**In re MART i.l.v.e.s. GOLDRICH, Debtor.**

**MART i.l.v.e.s. GOLDRICH, Plaintiff,**

v.

**NEW YORK STATE HIGHER EDUCA-TION SERVICES CORPORATION, et al., Defendants.**

**Bankruptcy No. 180–07314–21. Adv. No. 184–0022.**

United States Bankruptcy Court, E.D. New York.

Nov. 21, 1984.

Barbara C. North, New York State Higher Educ. Services Corp., Albany, N.Y., for defendants.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

The plaintiff, Mart i.l.v.e.s. Goldrich, is seeking monetary damages and injunctive relief against the several defendants because he was, and is, being denied guaranteed student loans by reason of the fact that he defaulted on an earlier student loan. That loan was one of the debts of which Goldrich was discharged in bankruptcy in April 1981. The defendants are the New York State Higher Education Services Corporation (formerly New York Higher Education Assistance Corporation) ("NYSHESC") and three of its officers, Dolores E. Cross, President, Peter J. Keitel, Vice President, and Mr. Cosgrove, described as head of the Default Section. Barbara C. North, Esq. has stated on the record that she represents all the named defendants.

NYSHESC is an educational corporation forming part of the State Education Department within the University of the State of New York. 16 McKinney's Education Law, §§ 651 *et seq.* It is authorized to guarantee the payment of student loans. 16 McKinney's Education Law, § 680.

The defendants raise two threshold issues:

(1) In light of *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the defendants challenge the jurisdiction of this Court over the claims asserted by the plaintiff and the relief requested.

(2) Invoking the Eleventh Amendment, they claim that the Federal courts lack jurisdiction over the State of New York, an immune sovereign which has not consented to be sued in the Federal courts.

The defendants also take issue with plaintiff on the merits. It is the defendants' position that Goldrich is not entitled to any additional guaranteed student loans under New York law and such denial is not in violation of 11 U.S.C. § 525.

## THE PROCEEDINGS HEREIN

The bankruptcy proceeding which Goldrich initiated on November 25, 1980 when he filed for relief under Title 11 was closed on May 1, 1981.

On October 7, 1983 Goldrich moved, on notice to NYSHESC, to reopen his bankruptcy proceeding in order to seek injunctive and monetary relief based on the denial to him of the guaranteed student loans for which he has applied annually. No one appeared in opposition to this request, although NYSHESC had been served with notice of the application. The Court reopened the proceeding by Order dated January 4, 1984. In an Opinion of the same date explaining its action, the Court said that there were good grounds for believing that Goldrich might have a possible cause of action under 11 U.S.C. § 525, but that this Court was not the exclusive, nor even the best, forum for its assertion. The Court added that in reopening the proceed-

ing it was not deciding the issue of jurisdiction.

On January 26, 1984 Goldrich filed a complaint alleging that the denial to him of guaranteed student loans violated 11 U.S.C. § 525 and was contrary to *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). He requested $9,500 in damages, plus interest, a writ of mandamus against defendants, court costs and legal fees. In the event the defendants pleaded lack of jurisdiction in the bankruptcy courts, he requested that the case be remanded to the United States District Court for the Southern District of New York. An amended complaint was subsequently filed, adding additional allegations as to the denial of assistance.

NYSHESC answered on April 14, 1984. The answer raised the two defenses described earlier. Goldrich responded with what he denominated a counterclaim but which is, in essence, a brief on the law.

No trial was had because the critical facts are not in dispute.

After the matter was submitted for decision Goldrich filed a supplementary affidavit with respect to the denial to him of a guaranteed student loan for 1984–1985 raising his damages from $9,500 to $12,000. He has also made it clear that he relies on 42 U.S.C. § 1983.

The facts are not in dispute and for the most part have been stipulated.

## PROPOSED FINDINGS OF FACT

1. On June 3, 1971, a guaranteed student loan, carrying 7.5% interest, which Goldrich had made from the First National Bank in the amount of $1,470, matured.

2. Goldrich did not repay the loan and it was declared in default. Pursuant to the guarantee given the Bank, NYSHESC paid the Bank on account of the loan $1,619.64, inclusive of interest to December 11, 1972.

3. When the loan remained unpaid, NYSHESC obtained a judgment against Goldrich for $2,265.30 on December 26, 1978.

4. On November 25, 1980 Goldrich filed a petition in this Court for relief under Title 11. Among the debts listed by him was his unpaid student loan.

5. At the time Goldrich filed for relief under Title 11 his student loan had been in default for over five years and consequently was dischargeable in bankruptcy.

6. The records of this Court, of which the Court takes judicial notice, show that NYSHESC did not appear at the meeting of creditors held pursuant to 11 U.S.C. § 341, nor did it oppose the discharge of the student loan made Goldrich.

7. On April 21, 1981 Goldrich was discharged from all his dischargeable debts including his student loan.

8. Both before and after Goldrich received his discharge in bankruptcy, NYSHESC refused to approve and guarantee student loans which various lending institutions were willing to make him.

9. Goldrich's applications for guaranteed student loans were rejected by NYSHESC in 1981, 1982, 1983 and 1984. Had they been approved Goldrich would have received approximately $10,000 to assist him in pursuing the advance degrees for which he is now working.

10. Section 661.6(b) of the Education Law of New York provides that "[a]ny student who is in default in the repayment of any student loan, the payment of which has been guaranteed . . . shall not be eligible for any . . . student loan so long as such default status . . . continues." 16 McKinney's Education Law, § 661.6(b) (1983–84 pocket part).

11. In accordance with Section 661.6(b), NYSHESC has refused to guarantee loans made Goldrich.

12. The sole reason for denying Goldrich the loans he requested was that his prior loan, which has been discharged in bankruptcy, remains unpaid.

13. Although Goldrich has been representing himself, he has incurred legal fees in connection with this proceeding of $640.60 and costs for xeroxing of $1.60.

## DISCUSSION

### I

The first threshold issue presented by the pleadings is that of the jurisdiction of this Court, apart from the Eleventh Amendment.

When the complaint herein was filed, in January, 1984, the Court was operating pursuant to the Emergency Resolution adopted by the Eastern District of New York on December 21, 1982. The Emergency Resolution referred to the bankruptcy judges of the Eastern District "[a]ll cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11." However, in a "related proceeding" a bankruptcy judge was not empowered to enter a judgment or dispositive order, unless the parties consented to such entry. The cases referred to the bankruptcy court were those cases of which the District Courts were given jurisdiction by 28 U.S.C. § 1471(a) and (b), enacted by the Bankruptcy Reform Act of 1978, Pub.L. 95–495.

On July 10, 1984 the "Bankruptcy Amendments and Federal Judgeship Act of 1984" (hereinafter "1984 Act") became law. Section 101(a) of the 1984 Act amended 28 U.S.C. § 1334 to vest in the district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

By order of Chief Judge Jack B. Weinstein, dated July 12, 1984, and amended August 7, 1984, the District Courts of the District have referred to the bankruptcy judges in this District "all cases under Title 11 or arising or related to a case under Title 11 filed in the Eastern District of New York." This reference, which parallels that in the Emergency Rule, is authorized by 28 U.S.C. § 157, added by the 1984 Act.

██ However, Section 157 limits the authority of bankruptcy judges to act in referred matters. Except in "core proceedings", as that term is defined in 28 U.S.C. § 157(b)(2), the bankruptcy judge may not enter a final order unless the parties consent thereto. The judge's power is limited to submitting proposed findings of fact and conclusions of law to the District Court. Any final order or judgment is to be entered by the district judge.

The limitations placed on the authority of the bankruptcy judge take this proceeding outside *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Therefore, the defendants' objection to jurisdiction based on that case is without merit. The final order on this proceeding will be entered by an Article III court which labors under no constitutional infirmity precluding it from assuming whatever jurisdiction Congress confers on it. *In re Pine Associates, Inc.*, 733 F.2d 208, 210 (2d Cir.1984) and cases there cited.

Section 525 of Title 11, quoted in full hereinafter, prohibits various kinds of discrimination against persons because of their resort to relief in bankruptcy. As earlier noted, 28 U.S.C. § 1334 gives the district courts jurisdiction of all proceedings "related to cases under Title 11". This phraseology now found in § 1334 taken from the Bankruptcy Reform Act was chosen to embrace all proceedings which have "a significant connection with bankruptcy". H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 47–48, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 6007 (hereinafter "House Report"). A controversy respecting whether New York has violated 11 U.S.C. § 525 by deeming Goldrich ineligible for financial assistance because of an outstanding debt, which has been discharged in bankruptcy, appears to fall squarely within the category of cases having a significant connection with bankruptcy. That jurisdiction over similar questions exists in the bankruptcy courts has been assumed in numerous decisions in many different jurisdictions. See cases cited, pp. 19–20 *infra*.

The scope and effect of a discharge have been part of the traditional jurisdiction of the bankruptcy court since 1970. Pub.Law 91–467, 84 Stat. 992 (1970), amending the Bankruptcy Act of 1898; 1A *Collier on Bankruptcy*, ¶ 17.27, ¶ 17.28A (14th Ed.

1978). The jurisdictional provisions of the Bankruptcy Code and of the 1984 Act simply expand the parameter of this traditional area.

Accordingly, unless the Eleventh Amendment precludes this particular suit, this Court has jurisdiction over this controversy. We now turn to the bar of the Eleventh Amendment.

## II

The Eleventh Amendment provides:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

■ Certain fundamental principles respecting the Amendment are now well established. One is that "an unconsenting State is immune from suits brought in Federal courts by her own citizens as well as by citizens of another State." *Employees v. Missouri Public Health Dept.*, 411 U.S. 279, 280, 93 S.Ct. 1614, 1616, 36 L.Ed.2d 251 (1973); *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

■ A second is that the jurisdictional bar applies to the enforcement of equitable remedies as well as to demands for damages. *Pennhurst State School & Hospital v. Halderman*, —— U.S. ——, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984).

■ Third, the fact that the State is not itself named as a defendant is not decisive. A suit may be against the State even though only agencies or individuals are named as defendants, but the application of the Amendment to such suits is a troublesome one. The Supreme Court has recently noted that: "prior decisions of this Court have not been entirely consistent" as to whether a suit is against the State itself when "it is brought only against state officials." *Pennhurst State School & Hospital v. Halderman, supra,* 104 S.Ct. at 908.

In this case, however, resolution of this troublesome question is greatly simplified by virtually four-square authority holding that the Eleventh Amendment bars the recovery of monetary damages from NYSHESC but not injunctive relief predicated on the unconstitutionality of a section of New York State's Education Law governing student assistance. *Mauclet v. Nyquist*, 406 F.Supp. 1233 (W.D.N.Y.1976), *aff'd. sub. nom Nyquist v. Mauclet*, 432 U.S. 1, 97 S.Ct. 2120, 53 L.Ed.2d 63 (1977); *Rabinovitch v. Nyquist*, 406 F.Supp. 1233 (W.D.N.Y.1976), *appeal dis.*, 433 U.S. 901, 97 S.Ct. 2962, 53 L.Ed.2d 1086 (1977). Mauclet and Rabinovitch were two aliens who sued both Ewald Nyquist, then Commissioner of Education of the State of New York, and the immediate predecessor of NYSHESC (406 F.Supp. 1234, n. 3). Their suit challenged the constitutionality of Section 661(3) of New York's Education Law which required an applicant for New York State financial aid to be a citizen or to intend to become one. The two cases were consolidated and heard by a single three-judge panel in the Western District of New York which held that Section 661(3) was unconstitutional under the Fourteenth Amendment, enjoined its enforcement and directed that the defendants process the plaintiffs' application for financial assistance. However, the panel refused to award the monetary damages sought only by Rabinovitch for the past denial of financial assistance saying:

"While declaratory and injunctive relief is appropriate, it is the opinion of this Court that *Edelman v. Jordan*, 415 U.S. 651 [94 S.Ct. 1347, 39 L.Ed.2d 662] (1974), holding that the eleventh amendment barred the courts from ordering state officials to remit benefits wrongfully withheld from eligible welfare applicants, does not allow the award of money damages in this case." 406 F.Supp. at 1236.

The defendants, including the predecessor of NYSHESC, appealed to the Supreme Court which affirmed the equitable relief awarded the plaintiffs. 432 U.S. 1, 97 S.Ct. 2120 (1977). But Rabinovitch's separate appeal from the denial of money damages

to him was dismissed. 433 U.S. 901, 97 S.Ct. 2962 (1977).

To the same effect, that money damages are not recoverable from NYSHESC, is an unrecorded decision by District Judge Whitman Knapp. *The McAvoy School, Inc. v. Boyer,* 79 Civ. 2780 (W.K.) (S.D.N.Y. 1980). In that case, Judge Whitman Knapp held that an action for monetary damages could not be maintained against the predecessor of NYSHESC, New York State High Education Services Corporation, and its officers because "such debt will ultimately be paid out of the public treasury through either appropriations or the voucher process.[1]

The decisions involving NYSHESC or its predecessor rest on the now well-established principle that an action against a state agency seeking the payment of monetary damages from public funds cannot be maintained. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ford Co. v. Dept. of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *George R. Whitten, Jr., Inc. v. State University Construction Fund,* 493 F.2d 177 (1st Cir.1974); *Trotman v. Palisades Interstate Park Comm.,* 557 F.2d 35 (2d Cir. 1977).

■ But while Goldrich may not recover damages, he is entitled under the authority of *Mauclet v. Nyquist, supra,* to the injunctive relief he seeks if, as he maintains, Section 661.6(b) of the Education Law of New York conflicts with the federal bankruptcy law. See also, *Edelman v. Jordan, supra; Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

### III

We now turn to the merits.

When this proceeding was brought, Section 525 provided in relevant part:

"... a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title, or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act." [2]

■ There can be no doubt that NYSHESC is a "governmental unit" within the meaning of the Bankruptcy Code. See *Matter of Marine Electric Railway Prod-*

---

**1.** Judge Knapp reached that conclusion through an analysis of the source of the agency's funds.

"An examination of the fiscal structure of the NYSHESC as created by statute leaves no doubt in our mind that in the event this suit results in a money judgment, it will be the state which ultimately 'foots the bill.'

The statute [New York Education Law] in defining the powers and duties of the Corporation indicates that among those duties is the submission of a student aid and loan budget request § 653(a) and an administrative and operating budget to the State § 653(b). Both budgets are subject to annual approval by various state legislative officers and in order to assure the payment by the Corporation to lending institutions for defaulted loans, the State is required to apportion and pay to the Corporation the amount necessary to pay all defaults for the next ensuing State fiscal year § 653(c). Furthermore, all expenditures of the Corporation are made via a voucher process and payments are made upon checks drawn by the Comptroller of the State of New York § 660. All of these provisions add up to the pure and simple fact that the Corporation is financially wholly dependent upon the State."

**2.** During the pendency of this proceeding, Congress enacted the "Bankruptcy Amendments and Federal Judgeship of 1984", P.L. 98–353, which amended Section 525 by designating the present language subdivision "(a)" and adding a new subdivision (b) which prohibits private employers from discriminating against debtors.

*ucts Division, Inc.,* 17 B.R. 845, 849 (Bkrtcy.Ct.E.D.N.Y.1982) and cases there cited. "Governmental unit" is defined in Section 101(21) of the Code as follows: "'Governmental unit' means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States, State, a Commonwealth, a District, a Territory, municipality, or a foreign state; or other foreign or domestic government ..." As the Committee Reports note, this provision defines "governmental unit" in the "broadest sense." House Report at 311; S.Rep. 95–989, 95th Cong. 2d Sess. 24 (1978) hereinafter "Senate Report," U.S. Code Cong. & Admin.News 1978, 5810, 6268.

Section 525 does not on its face embrace the refusal of money, credit or financing. What it prohibits is the refusal of, or discrimination with respect to, "a license, permit, charter, franchise or other similar grant." A state guarantee of a student loan cannot properly be described as a "license", or a "permit", or a "charter", or a "franchise", nor is it similar to any of these. Looking solely to the language used by Congress as indicative of the legislative intent, a state guarantee of a student loan does not appear to be among the types of discrimination which are prohibited.

However, the legislative history of Section 525 indicates that the statute does not necessarily embrace all the varieties of discrimination against debtors which conflict with the bankruptcy laws. The House and Senate Committee reports which accompanied the legislation which became the present Bankruptcy Code both noted with respect to Section 525:

"[T]he section is not exhaustive. The enumeration of various forms of discrimination against former bankrupts is not intended to permit other forms of discrimination. The courts have been developing the *Perez* rule. This section permits further development to prohibit actions by governmental or quasi-governmental organizations that perform licensing functions, such as a State bar associ-

ation or a medical society, or by other organizations that can seriously affect the debtors' [sic] livelihood or fresh start, such as exclusion from a union on the basis of discharge of a debt to the union's credit union.

The effect of the section, and of further interpretations of the *Perez* rule is to strengthen the anti-reaffirmation policy found in Section 524(b). Discrimination based solely on nonpayment could encourage reaffirmations contrary to the expressed policy." House Report, 366–7; Senate Report 81, U.S.Code Cong. & Admin.News 1978, 5867, 6323.

But at the same time as the Committee Reports note that the section is not exhaustive, the Reports also point out that Congress deliberately rejected the flat prohibition on all discrimination proposed by the Commission on the Bankruptcy Laws of the United States which drafted the first version of the legislation ultimately enacted as the Bankruptcy Code. *Ibid.*

Section 4–508 in the statute proposed by the Commission reads:

"A person shall not be subjected to discriminatory treatment because he, or any person with whom he is or has been associated, is or has been a debtor or has failed to pay a debt discharged in a case under the Act. This action [sic] does not preclude consideration, where relevant, of factors other than those specified in the preceding sentence, such as present and prospective financial condition or managerial ability." Report of the Commission on the Bankruptcy Laws of the United States, Part II, H.R.Doc. No. 93–137, 93d. Cong. 1st Sess. 143–44 (1973).

Evidently, it was the legislative intent that the courts should continue to invalidate all discrimination of the character condemned in *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) but Congress drew back from barring every variety of discriminatory treatment.

Accordingly, it is necessary to examine exactly what the Supreme Court held in *Perez v. Campbell, supra.* That case arose under the Bankruptcy Act which con-

tained no antidiscrimination language. It involved an Arizona statute which provided that an unsatisfied tort judgment, arising out of an automobile accident, would result in a suspension of the driver's license if it remained unsatisfied for sixty days, even though the judgment had been discharged in bankruptcy. In the view of the Court, the Arizona statute had the effect of frustrating one of the primary purposes of the Bankruptcy Act which was "to give debtors 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt,'" including "preexisting tort judgments". (Citations omitted.) 402 U.S. at 648. For that reason alone, the Court would have held the Arizona statute invalid under the Supremacy Clause, Article VI, Clause 2 of the Constitution. The Court went on to note that the State law was at odds with the Federal statute in its purposes, as well as in its effects, since its "declared purpose [was] to protect judgment creditors 'from financial hardship' by giving them a powerful weapon with which to force bankrupts to pay their debts despite their discharge." 402 U.S. at 654, 91 S.Ct. at 654.

*Perez* strongly suggests that any difference between the treatment of a debtor, with a discharged debt, and a nondebtor is inconsistent with the fresh start intended by the bankruptcy law. And the legislative history of Section 525 indicates that Congress by enacting Section 525 did not intend to leave debtors with anything less than *Perez* gave them.

Invoking *Perez* or Section 525, or both, the courts have invalidated a wide variety of practices by state and federal agencies, involving debtors under Chapter 7, Chapter 11 and Chapter 13. They include: rejecting a bid for a government contract because the bidder was in Chapter 11 (*In re Marine Electric Railway Prod. Div., Inc.*, 17 B.R. 845 (Bkrtcy.Ct.E.D.N.Y.1982); *In re Coleman American Movings Services, Inc.*, 8 B.R. 379 (Bkrtcy.Ct.D.Kan.1980); *Matter of Son-shine Grading, Inc.*, 27 B.R. 693 (Bkrtcy.Ct.E.D.N.Carolina 1983)); denying a state liquor license to a discharged debtor

(*In re Maley*, 9 B.R. 832 (Bkrtcy.Ct.W.D.N. Y.1981); *In re Aegean Fare, Inc.*, 35 B.R. 923 (Bkrtcy.Ct.D.Mass.1983)); denying transcripts or a college diploma (*Lee v. Board of Higher Education in City of New York*, 1 B.R. 781 (Dist.Ct.S.D.N.Y. 1979); *Handsome v. Rutgers University*, 445 F.Supp. 1362 (D.N.J.1978); *Matter of Heath*, 3 B.R. 351 (Bkrtcy.N.D.Ill.1980); *In re Howren*, 10 B.R. 303 (Bkrtcy.D.Kan. 1980)); evicting a discharged debtor by a State-aided housing authority (*Matter of Gibbs*, 9 B.R. 758 (Bkrtcy.D.Conn.1981)); suspending the right of debtors to act as a self-insurer under the state workers' compensation law (*In re Hillcrest Foods, Inc.*, 10 B.R. 579 (Bkrtcy.D.Maine 1981); discharging, or threatening a short-term suspension of, employee-debtors by a quasi-governmental employer because of resort to Chapter 13 (*In re Latchaw*, 24 B.R. 457 (Bkrtcy.Ct.N.D.Ohio 1982)); denying a residential building contractor a certificate of competency because of prior bankruptcy (*Matter of Lambillotte*, 25 B.R. 392 (Bkrtcy.Ct.M.D.Fla.1982)). A creditor has even been enjoined from pursuing his state remedies against a special Real Estate Recovery Fund because a judgment in his favor would have automatically resulted in the suspension of the debtor's real estate license. *Green v. Yang*, 29 B.R. 682 (Bkrtcy.Ct.S.D.Ohio 1983).

A few cases go the other way. The Third Circuit has held that college transcripts may be withheld to collect a student loan which was not discharged by the debtor's bankruptcy *Johnson v. Edinboro State College*, 728 F.2d 163 (3d Cir.1984). The Sixth Circuit in *Duffey v. Dollison*, 734 F.2d 265 (6th Cir.1984) sustained an Ohio statute which required motorists with unsatisfied motor vehicle tort judgments against them to post proof of financial responsibility as a condition to the restoration of driving privileges. In sustaining the statute, the Sixth Circuit noted that the Ohio act "neither provides creditors 'leverage for the collection of damages', nor under the facts here does it coerce bankrupts

into reaffirming discharged debts." 734 F.2d at 272.

Closer to the facts present here is *Rose v. Connecticut Housing Finance Authority*, 23 B.R. 662 (Bkrtcy.Ct. of Conn.1982) in which the debtor claimed that he had been denied mortgage financing by a state agency because of his failure to pay a discharged student loan. Bankruptcy Judge Krechevsky held Section 525 to be applicable and "conclude[d] that Congress intended to prevent discriminatory treatment in the field of mortgage financing." 23 B.R. at 666. He pointed out that to "hold to the contrary would frustrate the congressional policy of granting a debtor a fresh start by denying him a means open to other citizens to acquire a home." 23 B.R. at 666–67. However, the debtor failed to prove that his prior bankruptcy was the sole reason for the denial of his loan and was therefore unsuccessful in obtaining the injunctive relief which he requested.

The case most like the present one is *In re Richardson*, 15 B.R. 925 (Bkrtcy.Ct.E.D. Pa.), rev'd, 27 B.R. 560 (E.D.Pa.1982). In that case the state agency analogous to the defendant, NYSHESC, the Pennsylvania Higher Education Assistance Agency (PHEAA), refused to guarantee a new student loan to the plaintiff there because an earlier loan discharged in bankruptcy had not been repaid. The agency's Regulations at the time provided that a guaranteed loan would be denied any person who had allowed his loan to mature through purchase from the lender by the agency under the guarantee of a previous loan, unless the defaulted loan was repaid in full, the outstanding balance of the defaulted loan had been purchased by some lending institution, or the student had taken positive steps toward the repayment of the loan or supplied reasons for the failure to repay. The Bankruptcy Court held PHEAA's regulations to be discriminatory because they "treat a person who has had a student loan obligation discharged in bankruptcy different from a person who has never incurred a student loan debt." 15 B.R. at 929. The

Bankruptcy Court held that the plaintiff was entitled to a declaratory judgment that the Regulations were unlawful, and granted the plaintiff's request for an injunction prohibiting PHEAA and its officials from denying the plaintiff's application and directing them to forthwith approve that application.

The District Court reversed for reasons which are not altogether clear. Evidently it believed the Bankruptcy Court acted prematurely because its decision "having been rendered prior to a loan eligibility determination by PHEAA, the agency was precluded from any inquiry into the future financial responsibility of appellee." 27 B.R. at 575. The opinion suggests that if such inquiry had produced facts adverse to the applicant then the student loan could have been denied without violating 11 U.S.C. § 525.

Whatever the law may be in Pennsylvania it is clear that the New York statute requires denial of a student loan once there has been a default under a prior loan regardless of what investigation of the debtor's future financial responsibility may disclose. Whatever the result of such investigation—which there would be no purpose in making—the loan would not be made. Thus, the considerations which led to the reversal of the bankruptcy court in *Richardson* are absent from this case.

For the same reasons as led Bankruptcy Judge Krechevsky in *Rose v. Connecticut Housing Finance Authority, supra,* to hold that failure to pay a discharged student loan did not permit the refusal of mortgage financing by a state agency, and Bankruptcy Judge Price of this District to hold in *In re Marine Electric Railway Prod. Div., Inc., supra,* a most scholarly opinion exhaustively analyzing the relevant authorities, that governmental entities may not exclude a Chapter 11 debtor from bidding for a governmental contract, this Court concludes that New York cannot refuse to guarantee a student loan to Gold-

rich because an earlier loan was not paid but was discharged in bankruptcy.

New York's law cannot be reconciled with the federal bankruptcy law. Section 661.6(b) of New York's Education Law frustrates the Congressional policy of granting Goldrich a fresh start by denying him the means available to other citizens who have acquired a higher education. Therefore, under the authority of the *Perez* case, Section 661.6(b) is unconstitutional and the defendants should be enjoined from denying Goldrich because of it the loans he requests.

## IV

■ There remains the question of attorney's fees and costs. This proceeding is brought under 42 U.S.C. § 1983 to redress a wrong arising from a conflict between federal and state law. Goldrich may probably be awarded attorney's fees and costs despite the bar of the Eleventh Amendment. *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978).

## PROPOSED CONCLUSIONS OF LAW

1. This Court has jurisdiction to hear and determine this case and to submit proposed findings of fact and conclusions of law to the District Court pursuant to 28 U.S.C. § 157.

2. The Eleventh Amendment bars the damages but not the equitable relief requested in the complaint.

3. Section 661.6(b) of the Education Law of New York violates 11 U.S.C. § 525 and frustrates the purpose and objectives of the bankruptcy laws by denying debtors whose student loans have been discharged in bankruptcy eligibility for new loans.

4. The plaintiff is entitled to an injunction against the denial to him by the defendants of financial assistance because of his past unpaid, but discharged, student loans and to an affirmative direction requiring the defendants to process his application for such assistance.