EUGENE A. WRIGHT, Circuit Judge:
In this case we are asked to determine whether the bankruptcy court correctly ordered the Air Force to exercise its option to renew an 8(a) food service contract with Exquisito Services, Inc. That court found that the Air Force discriminatorily refused to renew the contract because Exquisito filed for bankruptcy. It ordered the Air Force to exercise the option and the district court affirmed the order. We affirm. BACKGROUND
Exquisito Services, Inc. participated in the Small Business Administration’s 8(a) program for socially and economically disadvantaged businesses. The program takes appropriate government contracts out of competitive bidding and contracts them to the SBA. The SBA subcontracts the work to its previously approved small businesses.
Through this arrangement Exquisito contracted to provide food services at Barks-dale Air Force Base. The contract had a primary term of one year with two one-year options.
In April 1986, Exquisito filed a Chapter 11 bankruptcy petition, but continued in business as a debtor in possession. In May, the Barksdale contracting officer informed Exquisito that, because of the bankruptcy, the contract options would not be exercised.
In the bankruptcy proceedings, Exquisito alleged discrimination in violation of 11 U.S.C. § 525(a) (Supp. II. 1984). The court found that the Air Force had not renewed the contract .solely because Exquisito had filed under chapter 11, and ordered renewal.
The Air Force exercised the option, but appealed the order to the District Court. While the appeal was pending, the Air Force solicited bids for the contract. Ex-quisito participated, but there were lower bids. The district court affirmed the bankruptcy court’s order to renew the contract and the government appeals.
ANALYSIS
The order to renew was based on the court’s determination that the statute prohibiting discrimination against those filing for bankruptcy applied. The section provides:
... a governmental unit may not .'.. refuse to renew a license, permit, charter, franchise, or other similar grant to, ... discriminate with respect to such a grant against, ... or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, ... solely because such bankrupt or debtor is or has been a debt- or under this title or a bankrupt or debt- or under the Bankruptcy Act,.... 11 U.S.C. § 525(a) (West Supp.1987).
For the purposes of Title 11, person is defined to include “individual, partnership, and corporation_” 11 U.S.C. § 101(35) (West Supp.1987). The court’s interpretation of the statute is reviewed de novo. See Matter of Consolidated Bancshares, Inc., 785 F.2d 1249, 1252 (5th Cir.1986).
In construing § 525, most courts have broadly applied the anti-discrimination provision. See In re Rees, 61 B.R. 114, 120-22 (Bankr.D.Utah 1986) (collecting cases); In re The A. C. Williams Co., 51 B.R. 496, 500 *153 (Bankr.N.D.Ohio 1985) (collecting cases); In re Goldrich, 45 B.R. 514, 521-22 (Bankr. E.D.N.Y.1984) (collecting cases). As a result, the section has been invoked successfully with regard to areas as diverse as liquor or drivers’ licenses, government contracts, school transcripts, public housing, mortgage financing, utility service, insurance, and agricultural subsidies. Id.
Courts have followed two approaches in delimiting the scope of § 525. Some have focused on the policy of the Bankruptcy Code of aiding the rehabilitation of the debtor and providing a fresh start. These courts have construed § 525 liberally to preclude actions that would frustrate this policy. See e.g. In re Sudler, 71 B.R. 780, 786-87 (Bankr.E.D.Pa.1987); In re Hopkins, 66 B.R. 828, 833-34 (Bankr.W.D.Ark. 1986); In re Elsinore Shore Associates, 66 B.R. 723, 740-43 (Bankr.D.N.J.1986); Matter of Holder, 40 B.R. 847, 850 (Bankr.E.D.Wis.1984); In Re Rath Packing Co., 35 B.R. 615, 620 (Bankr.N.D.Iowa 1983).
Support for this approach is drawn from the legislative history. Language in both the House and Senate Reports indicates that the “enumeration of various forms of discrimination against former bankrupts is not intended to permit other forms of discrimination.” H.R.Rep. No. 595, 95th Cong., 1st Sess. 367, reprinted in 1978 U.S. Code Cong. & Admin. News 6323;. S.Rep. No. 989, 95th Cong., 2d Sess. 81, reprinted in 1978 U.S. Code Cong. & Admin. News 5867. Instead, Congress charged the courts with defining the scope of § 525 according to sound bankruptcy policy. Id.
The better approach is taken by other courts that have focused on the specific language of the section, and have read the legislative history more narrowly. Those following this approach tend to limit the application of § 525 only to situations analogous to those enumerated in the statute. See e.g. In re Goldrich, 771 F.2d 28, 30 (2d Cir.1985); In re Rees, 61 B.R. at 123-24. Alternately, they have applied the provision only if the alleged discrimination resulted from non-payment of a debt actually dischargeable in bankruptcy. See Johnson v. Edinboro State College, 728 F.2d 163, 166 (3d Cir.1984).
These courts have generally required proof that the discrimination was caused solely by the debtor’s status, holding that only differentiation between debtor and non-debtor is precluded by the statute. See e.g. Duffey v. Dollison, 734 F.2d 265, 273 (6th Cir.1984); In re The Bible Speaks, 69 B.R. 368, 373-75 (Bankr.D.Mass.1987); In re Rees, 61 B.R. at 124; In re Helms, 46 B.R. 150, 154 (Bankr.E.D.Mo.1985); In re Webb, 38 B.R. 541, 545 (Bankr.E.D.Pa.1984); Matter of Rose, 23 B.R. 662, 667 (Bankr.D.Conn.1982).
This approach derives its support from changes made in the wording of the section in response to concerns voiced by the credit industry and others. The bill, as originally proposed, prohibited discriminatory treatment because one was a debtor or had failed to pay a debt discharged in bankruptcy. Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93-137, 93d Cong., 1st Sess., Pt. 2 at 143-44 (1973). However, the wording generated substantial controversy.
Extensive hearings before the House Subcommittee on Civil and Constitutional Rights and the Senate Subcommittee on Improvements in Judicial Machinery revealed serious concerns that the language was too broad. See e.g. Hearings on S. 234 and S. 236 Before the Senate Subcomm. on Improvements in Judicial Machinery, 94th Cong., 1st Sess. Pt. 1 at 129, 146, 173 (1975); id., Pt. 2 at 433, 479, 486. Thereafter the bill was redrafted to specify that discrimination by the government in some enumerated functions was prohibited. Id. Pt. 2 at 440; House Report at 6323 and Senate Report at 5867.
Further authority for a narrow reading of § 525 is found in Congress’s emphasis that the section “does not prohibit consideration of other factors, such as future financial responsibility or ability, and does not prohibit imposition of requirements such as net capital rules, if applied nondiscriminato-rily.” Senate Report at 5867. Only discrimination based solely on the debtor’s status is precluded. Id.
*154 Similarly, the House Report indicates that the “prohibition does not extend so far as to prohibit examination of the factors surrounding the bankruptcy, the imposition of financial responsibility rules if they are not imposed only on former bankrupts, or the examination of prospective financial condition or managerial ability.” House Report at 6126.
Adopting the narrow construction approach, we examine the character of the relationship between the parties, and the Air Force’s reason for refusing to exercise the option, to determine whether the refusal falls within the prohibition of section 525.
THE NATURE OF THE 8(a) PROGRAM
Exquisito provided services under the Small Business Administration’s 8(a) program. Small Business Act § 8(a), 15 U.S.C. § 637(a)(1). This program was established as part of the Small Business Act, 15 U.S.C. § 631 et seq.,
to aid, counsel, assist, and protect ... the interests of small-business concerns in order to preserve free competitive enterprise [and] to insure that a fair proportion of the total purchases and contracts or subcontracts for property and services for the Government ... be placed with small-business enterprises_ 15 U.S.C. § 631(a). See also 15 U.S.C. § 637(d)(1).
The act was based on the policy that the essence of the American economic system of private enterprise is free competition ... [that] the preservation and expansion of such competition is basic not only to the economic well-being but to the security of this Nationf, and that s]uch security and well-being cannot be realized unless the actual and potential capacity of small business is encouraged and developed. 15 U.S.C. § 631(a).
To implement this policy, and specifically to encourage minority business enterprises, Congress authorized the SBA to act as intermediary between the Government and minority businesses. 15 U.S.C. § 637(a). The SBA contracts with the Government or agency, then “arrange[s] for the performance of such procurement contracts by negotiating or otherwise letting subcontracts to socially and economically disadvantaged small business concerns_” 15 U.S.C. § 637(a)(1). See Valley Construction Co. v. Marsh, 714 F.2d 26, 27 (5th Cir.1983).
Because of the strong policies inherent in the 8(a) program, contracts may be awarded without competition, and at rates higher than, those at which a non-8(a) business could perform. See Urban Data Systems, Inc. v. United States, 699 F.2d 1147, 1155 (Fed.Cir.1983); Ray Baillie Trash Hauling, Inc. v. Kleppe, 477 F.2d 696, 708-09 (5th Cir.1973), cert. denied, 415 U.S. 914, 94 S.Ct. 1410, 39 L.Ed.2d 468 (1974). Congress assumed that 8(a) businesses are unable to compete effectively in the marketplace, and are unable to win competitively bid procurement contracts. See 15 U.S.C. § 637(a)(6); Ray Baillie Trash Hauling, Inc., 477 F.2d at 708. The Government is assumed to be contracting for services but also to train minority businesses, a benefit of some value. See Urban Data Systems, 699 F.2d at 1155.
As part of the 8(a) program, the SBA contracted with the Air Force to provide services. The SBA then determined that Exquisito would have the exclusive right to perform them according to the terms and for the length of that contract. During the life of the contract the SBA would assist Exquisito. The program is, therefore, essentially a franchise as defined in Black’s Law Dictionary (5th ed. 1979). As such, it is included within the scope of 11 U.S.C. § 525(a) and discrimination against Exquisito solely because of filing under Chapter 11 is prohibited.
CONDUCT PROHIBITED BY SECTION 525
The bankruptcy court found that the Air Force did not exercise its contract option solely because Exquisito had filed under Chapter 11. This finding is supported by evidence in the record and was adopted by the district court. We must affirm the finding, which is not clearly erroneous. See Matter of Consolidated Bancshares, Inc., 785 F.2d 1249, 1252 (5th *155 Cir.1986); In re Chalik, 748 F.2d 616, 619 (11th Cir.1984).
The district court noted correctly that the impetus behind section 525(a) is to prevent governmental units from frustrating the policies of the Bankruptcy Code by discriminating against persons seeking relief under that Code. See Duffey v. Dollison, 734 F.2d 265, 271 (6th Cir.1984). Becaus~ the relationship here was similar to those specified in the statute, and because the government's conduct was the sort of conduct the statute was designed to prevent, we hold that § 525 applies. Refusal to exercise the option was discrimination within the meaning of the section.
~~HE COURT'S AUTHORITY TO ORDER RENEWAL
The United States contends, however, that the bankruptcy court exceeded its authority by ordering the contract renewed instead of remanding to the agency. The statute provides:
The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title. 11 U.S.C. § 105(a) (Supp. II 1984).
Section 105 is "an omnibus provision phrased in such general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case." 2 Collier on Bankruptcy ¶ 105-01 (L. King 15th ed. 1987). Under it, the court has broad power to ensure that the debtor is not unduly denied benefits which inure to him under the Bankruptcy Code. In re Carico, 308 F.Supp. 815, 817 (E.D.Va.1970).
Bankruptcy courts have traditionally been considered courts of equity, with full equitable powers. See Matter of Mobile Steel Co., 563 F.2d 692, 698-99 (5th Cir.1977). See also In re Hopkins, 66 B.R. 828, 833 (Bankr.W.D.Ark.1986) (collecting cases of types of remedies requested and awarded under § 105); Boyd v. Martin Exploration Co., 56 B.R. 776, 781 (Bankr. E.D.La.1986) (bankruptcy court has equitable power to order specific performance of agreements).
Reflecting that understanding of § 105, one court has held that "if discrimination as proscribed by 11 U.S.C. § 525(a) were found, that, in itself, would justify invocation of 11 U.S.C. § 105(a), ... as such discrimination cannot be countenanced in any circumstances." In re Metro Transp. Co., 64 B.R. 968, 975 (Bankr.E.D.Pa.1986) (citations omitted). We hold that the bankruptcy court was within its section 105(a) authority when it ordered the Air Force to exercise the option, which it had refused to do only because Exquisito had filed under Chapter 11 in violation of § 525.
AFFIRMED.