**In re Thomas Joseph HINDERS, Jr.,
Debtor/Defendant,**

**v.**

**MIAMI VALLEY REGIONAL TRANSIT
AUTHORITY, Plaintiff.**

**Bankruptcy No. 3–82–01388.
Adv. No. 3–82–0426.**

United States Bankruptcy Court,
S. D. Ohio, W. D.

Aug. 23, 1982.

Mark S. Foster, Dayton, Ohio, for debtor.

Craig T. Matthews, Dayton, Ohio, for plaintiff.

Thomas R. Noland, Dayton, Ohio, trustee.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### PRELIMINARY PROCEDURE AND STATEMENT OF FACTS

On 8 July 1982 Plaintiff Miami Valley Regional Transit Authority (RTA) filed a complaint seeking relief from the stay imposed under 11 U.S.C. § 362 to proceed with an action pending in the Municipal Court of the City of Dayton against Defendant Debtor Thomas J. Hinders, Jr. (Hinders) arising out of a collision on 14 September 1981 in which a motor coach owned by RTA was damaged.

On 15 July 1982 Hinders filed a motion to dismiss the complaint which joined issues on questions of law, the facts having been stipulated.

In the state court action RTA alleges Hinders negligently drove his vehicle left of the center line on Valley Street in Dayton, Ohio, colliding with the motor coach and resulting in damages in the amount of $2473.08.

The RTA now seeks to proceed to judgment in the state court "and then certify said judgment to Ohio's Registrar of Motor Vehicles, enabling the Registrar to proceed under Ohio's financial responsibility laws to suspend Debtor's driving privileges until he can prove financial responsibility."

According to the records on file with the Ohio Bureau of Motor Vehicles Hinder has a history of driving violations and convictions since and despite completing a remedial driver course on 19 August 1978. On the record are noted convictions in various state courts: on 21 November 1980 for speeding, on 1 July 1981 for disobeying a traffic control device, on 28 September 1981 for driving left of center line, and on 17 March 1982 improper turn. The record further indicates that for each of these four convictions he was assessed 2 violation points, totalling 8 points toward the twelve necessary for suspension of driving privileges.

### CONCLUSIONS OF LAW

■ The first issue raised is whether or not 11 U.S.C. § 362(d) provides for relief from the automatic stay under the circumstances of this case. Defendant first urges that relief from the stay may be granted only for "lack of adequate protection of an interest in property of such party in interest," or lack of an equity or necessity for such property to an effective reorganization. This aspect of the motion to dismiss must be denied. A reading of the literal terms of the statute indicates that although such is the primary thrust of the relief granted it is not exclusive. The statute very explicitly provides additional discretion to the Bankruptcy Court to grant relief "for cause, including the lack of adequate protection ..." The legislative history of § 362(d) elucidates, as follows:

"Subsection (c) governs automatic termination of the stay. Subsections (d) through (g) govern termination of the stay by the court on the request of a party in interest. Subsection (d) requires the court, on request of a party in interest, to grant relief from the stay, such as by terminating, annulling, modifying, or conditioning the stay, for cause. The lack of adequate protection of an interest

in property of the party requesting relief from the stay is one cause for relief, but is not the only cause. As noted above, a desire to permit an action to proceed to completion in another tribunal may provide another cause. Other causes might include the lack of any connection with or interference with the pending bankruptcy case. For example, a divorce or child custody proceeding involving the debtor may bear no relation to the bankruptcy case. In that case, it should not be stayed. A probate proceeding in which the debtor is the executor or administrator of another's estate usually will not be related to the bankruptcy case, and should not be stayed. Generally, proceedings in which the debtor is a fiduciary, or involving postpetition activities of the debtor, need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors. The facts of each request will determine whether relief is appropriate under the circumstances." House Report No. 95–595, 95th Cong., 1st Sess. (1977) 343–4, 9 Bkr–L Ed: § 82:16 pp. 353–4. Cf. Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 53, 55, U.S. Code Cong. & Admin. News, pp. 5787, 6300. 9 Bkr–L Ed § 83:6, at p. 73, 75, which emphasizes the primary purpose, the protection of secured parties.

## II

The second issue is whether or not a discharge in bankruptcy precludes litigation in the state courts to reduce a (tort) claim to judgment against Defendant for the avowed purpose of seeking a revocation of his driving privileges. RTA urges it "does not seek to collect money from the Debtor. Plaintiff fully recognizes that to do so would be in violation of the rights afforded the Debtor under the Code. However, the Bankruptcy Code does not prohibit a state from imposing reasonable requirements upon the 'fresh start' of a debtor, who is also a driver, for reasons which are not solely attributable to his being a debtor." This proposition is based primarily upon the case of *In re Matter of Cerny,* 17 B.R. 221, 8

B.C.D. 900 (Bkrtcy. N.D. Ohio 1982), supported in principle by *Weaver v. O'Grady,* 350 F.Supp. 403 (S.D. Ohio 1972) and *Iszczukiewicz v. Universal Underwriters Inc. Co.,* 182 F.Supp. 733 (N.D. Ohio 1960) aff'd mem. 290 F.2d 590 (6th Cir. 1961).

Defendant counters primarily upon the conclusion reached in the case of *In re Duffey,* 13 B.R. 785, 8 B.C.D. 271 (Bkrtcy. S.D. Ohio 1981) and *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) and 11 U.S.C. § 525 enacted to codify the *Perez* doctrine. He argues " ... that Plaintiff's instant action is nothing more than a meritless sham designed to collect a debt from a debtor under the protection of the provisions of the Bankruptcy Code."

It should be noted, however, that if Plaintiff accepts payment from the Debtor under the guise of reporting judgment satisfaction to the state, to restore driving privileges, there would be a patent violation of the injunction enacted by 11 U.S.C. § 524(a)(2) which not only prohibits legal actions, but also "any act" to collect.

The facts *instanter* put the focus on a very glaring deficiency in state statutory law. There is no doubt from Hinders' driving record that he is a potential menace on the public roads and has been irresponsible in not carrying liability insurance. As a very minimum there should be some assurance of financial responsibility to cover future damages suffered by his demonstrated irresponsibility.

This court is constrained to disagree in part with the rationale and conclusion of the *Duffey* case and cases cited therein. We concur to the point that the Bankruptcy Code of 1978 not only enjoins actions and acts to collect a discharged judgment, but specifically "voids any judgment obtained at any time, to the extent that the judgment is a determination of the personal liability of the debtor...." 11 U.S.C. § 524(a).

A state cannot revoke or refuse to renew a driver's license only because of a judgment for damages discharged in bankruptcy. In this sense the Ohio Financial

Responsibility Act (R.C. Chap. 4509) is in conflict with the *Perez* doctrine as codified by 11 U.S.C. § 525. As emphasized by the attorney for Defendant, the State of Ohio could enact non-discriminatory legislation by requiring compulsory liability insurance or mandatory "no-fault" insurance, similar to that enacted in other states, to protect other drivers, including a specific judgment creditor.

The language of 11 U.S.C. § 525 could not be more specific in prohibiting a governmental unit from denying or refusing to renew a driver's license "solely because such bankrupt or debtor is or has been a debtor ... or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act."

### III

Having concluded that the Ohio Financial Responsibility Act cannot bear constitutional muster under the *Perez* doctrine as enacted into U.S.C. § 525 of the 1978 Bankruptcy Code to the extent that it discriminates against debtors in bankruptcy or seeks to effect collection of judgments arising out of motor vehicle accidents, the focus turns to the specific relief from stay action *sub judice* and the facts, assuming that any judgment obtained would be discharged and entirely void.

Although the jurisdiction of the Bankruptcy court and the *Perez* doctrine enjoin any act by either a judgment creditor or by the State of Ohio to interfere with rights obtained from a discharge in bankruptcy in such a discriminatory manner, neither is precluded from invoking the court's jurisdiction to seek relief from either the automatic stay or the discharge injunction, for cause. The bankruptcy court traditionally has exclusive and pre-emptive jurisdiction over the effect and enforcement of its discharges, codified in 11 U.S.C. §§ 524–525. See *Matter of Sneed*, 13 B.R. 151 (Bkrtcy. S.D. Ohio 1981); *9 Am. Jur. 2d, Bankruptcy* §§ 772, 775, 838, 1332, 1404, 1550, 1618.

In this regard this court concurs with the analysis of state law in *Cerny* basically. We are constrained to disagree that a debtor must invoke bankruptcy court jurisdiction to have driving rights restored after a discharge. Such should be automatic unless the state invokes bankruptcy court jurisdiction to litigate non-discriminatory factors. The state in such respects would have no more authority than any other litigant to circumvent either pre-discharge or post-discharge stay and injunction.

In the instant case there is a *prima facie* proof that debtor is a potential menace on the highways. The stay should be lifted to complete the driving record maintained in the office of the Registrar of Motor Vehicles pursuant to Ohio's financial responsibility statutes. Debtor already has accumulated at least eight points toward license suspension or revocation. See Ohio Revised Code §§ 4507.16 et seq. Furthermore, after acknowledging that any judgment or a discharged debt is absolutely void and uncollectible, extenuating circumstances that render the public safety and the prospective responsibility of a discharged debtor at issue are not nullified.

Proof of financial responsibility may be given by several methods, including the obtaining of motor-vehicle liability insurance. Ohio R.C. §§ 4509.44–4509.46. Such proof must only cover future risks, and should not be imposed retroactively to cover a judgment discharged in bankruptcy.

The judgment discharged in bankruptcy merely precipitates the involvement of the state. If the only reason to invoke the suspension of driving privileges is a judgment discharged in bankruptcy, such action would be in direct contravention of 11 U.S.C. § 525 and the State of Ohio cannot summarily revoke or refuse to renew a license, registration, or a nonresident's operating privilege. If other factors exist, as herein, the State may invoke the jurisdiction of the bankruptcy court for relief from the stay or injunction; however, under no circumstance may state action hinge upon satisfaction of the discharged judgment unless there has been a reaffirmation ap-

proved by court order pursuant to 11 U.S.C. § 524(c).

Such a conclusion is perfectly consistent with the *Perez* doctrine. Furthermore, from the legislative history of the Bankruptcy Code we know: "The prohibition does not extend so far as to prohibit examination of the factors surrounding the bankruptcy, the imposition of financial responsibility rules if they are not imposed only on former bankrupts, or the examination of prospective financial condition or managerial ability. The purpose of the section is to prevent an automatic reaction against an individual for availing himself of the protection of the bankruptcy laws.." H, Repot. No. 95–595, p. 165, Bkr–L Ed. Legislative History § 82:4, p. 142.

Accordingly, Plaintiff must be granted relief from the stay to proceed in state court for the sole purpose of obtaining a finding of liability only, and not for any purpose or act to collect, recover or offset any such debt as a personal liability of the debtor or from property of the debtor, whether or not discharge of such debt is waived.

*Note:* Between the time the foregoing decision was issued and the date it could be filed and docketed, this court learned that *In Re Duffey*, 13 B.R. 785, 8 B.C.D. 271 has been reversed on appeal. The opinions expressed herein should not be deemed or interpreted in conflict with that appellate decision.