**In re Grady Lee HELMS, Debtor,**

**Grady Lee HELMS, Plaintiff,**

v.

**Donald L. CUSTIS, as Acting Administrator of Veterans Affairs, an Officer of the United States of America, Defendant.**

**Bankruptcy No. 80–01704(1).**

**Adv. No. 82–0064(3).**

United States Bankruptcy Court,
E.D. Missouri, E.D.

Feb. 5, 1985.

Terrance L. Farris, Clayton, Mo., for plaintiff.

Anthony L. Anderson, Clayton, Mo., Joseph Moore, Asst. U.S. Atty., Stuart I. Kaufman, St. Louis, Mo., for Veterans Admin.

ORDER

JAMES J. BARTA, Bankruptcy Judge.

This matter is before the Court upon the Complaint of Grady Lee Helms, debtor/defendant, for a judgment against the Veter-

ans Administration for refusing to grant the debtor's application for a home loan. The debtor has argued that the refusal was in violation of the protection against discriminatory treatment which is set out at 11 U.S.C. § 525.[1] A brief review of the history of this proceeding is included as part of these findings and conclusions.

The debtor and his spouse filed a joint Chapter 7 liquidating bankruptcy petition on August 7, 1980. After determining that no assets existed for administration, the trustee filed a report of no distribution. The debtors were granted a full discharge of their debts by an Order entered on November 10, 1980, and the bankruptcy file was closed on February 20, 1981. On Friday, January 29, 1982, Grady Lee Helms filed a petition to reopen the closed case. He simultaneously filed a complaint to enjoin the continuation of a non-bankruptcy eviction proceeding which was being prosecuted by the Veterans Administration under a non-bankruptcy court judgment. At the time of this complaint, the debtor and his spouse were residing in the home which is the subject of these proceedings. The bankruptcy case was reopened and the debtor's request for a temporary restraining order without notice was denied by this Court on January 29, 1982; the complaint was then set for hearing on February 1, 1982. Testimony and evidence were presented on February 9 and 10, 1982. Prior to the hearing on February 10, Mr. Helms filed a First Amended Complaint which requested relief in addition to the request for an injunction. Although the hearing was concluded on February 10, 1982, at the debtor's request, additional testimony was presented on July 24, 1982.

At the conclusion of the hearing on February 10, 1982, the Court entered findings and conclusions denying the debtor's request for a preliminary injunction which would have stopped the eviction proceeding. The Court found in part that significant irreparable harm had not been shown on this record, and that the interests of fairness and the public interest did not permit the debtor to use his bankruptcy discharge to frustrate the legal process of a competent non-bankruptcy court. Thereafter, the parties submitted legal memoranda on the question of discriminatory treatment, and the matter was taken under submission by the Court.

The documentary evidence and the witnesses' testimony in these hearings indicate that the debtor's real property was foreclosed upon by Farm & Home Savings & Loan on March 11, 1981, approximately 3 weeks after this bankruptcy case was closed. Thereafter, Farm & Home's interest in the property was assigned to the Veterans Administration. In early April, 1981, Grady Lee Helms contacted the Veterans Administration in an attempt to repurchase the property. Shortly after this first visit, Mr. Helms executed an agreement to buy the property for cash with no VA financing, and submitted a $500.00 payment as earnest money. The debtor was unable to carry out the remaining terms of the cash sale agreement and the parties

1. § 525. **Protection against discriminatory treatment.**

Except as provided in Perishable Agricultural Commodities Act, 1930 (7 U.S.C. §§ 499a–499s), the Packers and Stockyards Act, 1921 (7 U.S.C. §§ 181–229), and section 1 of the Act entitled "An Act making appropriations for the Department of Agriculture for the fiscal year ending June 30, 1944, and for other purposes," approved July 12, 1943 (57 Stat. 422; 7 U.S.C. § 204), a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

agreed to cancel the contract. The $500.00 deposit was returned to Mr. Helms.

Mr. Helms again contacted the VA in the late Summer and early Fall of 1981. The parties' testimony at the hearing in this Court was not in agreement as to the meaning of the discussions which occurred during these meetings. Mr. Helms stated that during his separate discussions with two VA representatives, he had been promised a direct loan to assist in purchasing the property. One of these officials testified in this hearing that in early October, 1981, he had discussed the possibility of a direct loan with both Mr. and Mrs. Helms. Although the couple was given a set of papers to be filled out and returned with an earnest money deposit, neither the papers nor the money was ever presented to the Veterans Administration. This VA witness unhesitatingly stated that at no time had he promised a direct loan to Mr. and Mrs. Helms.

The second VA representative testified that his discussions with Mr. Helms dealt only with the possibility of a cash purchase of the property. He recalled one comment by Mr. Helms to the effect that the Veterans Administration interest rate was too high at that time and that he (Helms) could get a lower rate from other sources.

A third VA witness testified as to the general procedure used in considering requests for direct loans. In his capacity as a loan guarantee officer, he stated that he must consider the applicant's ability to repay the loan and whether or not the applicant is a satisfactory credit risk. In addition, he must consider the reasonableness of the proposed payments in relations to the applicants income, as well as other factors which must be agreed upon by the applicant. He stated further that this process involved a series of forms and documents which are prepared by the applicant and submitted to the VA at various stages prior to closing. His interpretation of the several discussions between Mr. Helms and the Veterans Administration was that the VA was contemplating a cash sale. Although Mr. Helms was given the opportunity to purchase the property with a direct loan, this witness believed that this process was abandoned when the Helms failed to file the completed documents and earnest money. This witness also testified that in no time did he state to Mr. and Mrs. Helms that the reason for denying a direct loan was the debtors' bankruptcy.

The debtors' testimony and exhibits produced no direct evidence to support their contention that the Veterans Administration had denied them a direct loan solely because they had been debtors in a bankruptcy proceeding.

In January, 1982, Mr. Helms asked the VA to reissue a Certificate of Eligibility for loan guarantee benefits. Plaintiff's Exhibit No. 2 reflects that on January 11, 1982, his request was granted and the entitlement was restored. Mr. Helms stated that he had not made a request for such restoration prior to January, 1982 because he was unaware of his right to do so. There is no evidence that the VA delayed his request for a Certificate of Eligibility longer than the few days which were required to process the administrative forms. Therefore, the debtor's contention that the Certificate of Eligibility, was delayed because of his bankruptcy is wholly unsupported by the record.

Mr. Helms testified further that at about the same time that he requested the Certificate of Eligibility he and his wife had filled out and delivered a four-page document to the Veterans Administration. These papers were signed and dated by Mr. and Mrs. Helms on January 7, 1982. In a box labelled "Section IV–Acceptance by Veterans Administration," the signature of a Loan Guarantee Officer had been entered next to the date, "1/8/82." The record here is unclear, however, as to whether or not this document was returned to the debtors after being signed by a loan officer. At some point after January 8, 1982, the debtor filed his request to reopen the bankruptcy case and to prosecute this action.

The debtors' prayer in the amended complaint has requested the following relief:

(1) An injunction to prevent eviction. This request was previously denied by the Bankruptcy Court, and is now moot because the debtors no longer occupy the premises.

(2) Declare that plaintiff is duly qualified for a term loan to re-purchase this real property. The question of Mr. Helms' qualifications to receive a term loan was only tendentually referred to during the hearings in the bankruptcy court. Assuming that this Court enjoys jurisdiction to consider such a question,[2] the Court is unable to conclude from the evidence that the debtor is qualified for a term loan.

(3) Order that the plaintiff be considered for a term loan. Again assuming jurisdiction in the bankruptcy court, there is nothing in this record which would support such a drastic intervention into the administrative procedures of the Veterans Administration.

(4) Order that such loan be made to this plaintiff. No evidence has been presented to support this request.

(5) Declare that the Veterans Administration's refusal to make a term loan was a discriminatory practice pursuant to § 525. This request will be considered in more detail in the remaining paragraphs in this Memorandum.

The Bankruptcy Code at § 525 has codified and expanded upon the principles set out in *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). In *Perez*, the Supreme Court invalidated an Arizona Law which was in conflict with the Federal Bankruptcy Law. The state law provided that a bankruptcy discharge did not prohibit the state from suspending a debtor's driver's license for failure to satisfy a judgment which had resulted from the operation of a motor vehicle. The Court's decision was based upon previous holdings in the Supremacy Clause, and on its conclu-

sion that the state law, if enforced, would frustrate the bankruptcy concept of a fresh start. In later years, different fact situations have prompted the bankruptcy courts to consider the rationale in *Perez* as well as the legislative intent behind § 525.

In 1982, the State of Connecticut was prohibited from refusing to allow individuals to participate in a state mortgage financing program solely because the individuals had filed for bankruptcy relief. The Court stated that the bankrupts were entitled to consideration based upon their present financial capability. *In the matter of Larry Rose*, 23 B.R. 662, 9 B.C.D. 885 (Bankruptcy D. Connecticut, 1982).

Other cases have prohibited state action in differing circumstances: § 525 was held to prohibit the New York City transit authority from refusing a low bid on a public contract for the sole reason that the bidder's bankruptcy case was still pending. *In the matter of Marine Electric Railway Products Division*, 17 B.R. 845, 8 B.C.D. 977 (Bankruptcy E.D.N.Y., 1982); a pending Chapter 11 case will not disqualify the debtor from bidding for contracts to be awarded by the State of North Carolina. *Sonshine Grading, Inc.*, 27 B.R. 693, 10 B.C.D. 349 (Bankruptcy E.D.N.C., 1983); a police department regulation which requires that a police officer be dismissed for filing a voluntary petition in bankruptcy has been held to be violative of the Supremacy Clause. *Rutledge v. City of Shreveport*, 387 F.Supp. 1277 (W.D. Louisiana, 1975); and county officials may not refuse to renew a Chapter 7 debtor's certificate of competency as a residential building contractor solely because of the pending bankruptcy case. *In the matter of Dennis H. & Barbara Lambillotte*, 25 B.R. 392, 9 B.C.D. 1385 (Bankruptcy Middle District of Florida, 1982).

---

2. *See,* 11 U.S.C. § 105:

   **§ 105. Power of court.**

   (a) The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

   (b) Notwithstanding subsection (a) of this section, a bankruptcy court may not appoint a receiver in a case under this title.

■ In most of the opinions which have considered § 525, the courts have recognized the fact that a judgment for the debtor requires a showing of discrimination solely because of one of three factors: That the individual is or had been a debtor under the Federal law; that the individual had been insolvent before being granted or denied a discharge; or that the individual had not paid a dischargeable debt. These requirements are consistent with the clear statement of the Congressional intent with regard to § 525. Therefore, to support such a judgment the record must provide sufficient evidence to establish that the discriminatory treatment resulted *solely* because of the individual's recourse to the bankruptcy laws.

■ The record in this case contains no direct evidence of such discrimination. Other than the debtor's testimony as to his feeling and belief that he was not granted a loan because of his bankruptcy, the only evidence which might support his allegation is the information in plaintiff's Exhibit No. 1, the credit statement. Although the document appears to be the first of a series of forms which are used in the loan application process, the credible evidence has established that the same form is used if the transaction involves only a cash sale. The VA's contention that Exhibit No. 1 was looking toward a cash sale is supported by the absence of information which is normally supplied when an individual applies for credit: The spaces requested information concerning business references, bank accounts, assets and other obligations are blank on the debtor's form. Furthermore, the terms of purchase are not specified other than the purchase price of $52,150.00. Even if this document could be construed as a loan application, there is nothing within its four corners, and nothing in a consideration of the record as a whole, which establishes that this debtor was denied credit or other remedies which might be available to him, solely because of his having obtained relief under the bankruptcy laws. Therefore, the debtor's final request in the amended complaint must also be DENIED.

To complete the record in this case, the Court must respond to the parties' references to affidavits by certain witnesses. Although the defendant's memorandum indicates that certain information was contained in affidavits, no affidavits had been made a part of this file; and, therefore, such affidavits, if they exist, were not considered in preparing these findings and conclusions. By a separate Order, the debtor's requests in the amended complaint are DENIED.