In re FRESH APPROACH, INC., Debtor.

FRESH APPROACH, INC., Plaintiff,

v.

UNITED STATES of America, Department of Agriculture, Defendant.

Bankruptcy No. 385–30293–F.
Adv. No. 385–3365.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

May 17, 1985.

M. Bruce Peele, Jones & Brutsche, Dallas, Tex., for debtor.

Toby L. Gerber, Dallas, Tex., for Standard Fruit and Vegetable.

John Mitchell Nevins, Asst. U.S. Attorney, Dallas, Tex., for U.S. Atty.

## MEMORANDUM OPINION

JOHN C. FORD, Bankruptcy Judge.

On February 13, 1985, Debtor, Fresh Approach, Inc. (hereinafter "Debtor"), filed its petition for relief under Chapter 11 of the Bankruptcy Code. Debtor operated, and continues to operate as Debtor-in-Possession, a market featuring a variety of fresh produce and groceries. In the course of its operations, Debtor had obtained from the United States Department of Agriculture, Defendant herein, a license to buy and sell produce pursuant to the provisions of the Perishable Agricultural Commodities Act of 1930, 7 U.S.C. 499a *et seq.* (hereinafter "PACA"). Debtor's license terminated on

September 2, 1984 upon Debtor's failure to pay the statutory renewal fee of approximately $180.00. 7 U.S.C. 499d(a). Notwithstanding the lapse of its license, Debtor continued to sell produce up to the date its petition for relief was filed with this Court. The Debtor-in-Possession has continued to operate without benefit of such license during the pendency of the case.

Prior to filing its petition, Debtor ordered and received a number of shipments of produce from two particular sources, Standard Fruit and Vegetable Company and Market Distributing Company. As its financial circumstances began to deteriorate, Debtor failed to meet certain of its obligations, including payment of the invoices presented by the foregoing produce creditors. Standard Fruit and Vegetable moved to protect its interest in the statutory trust imposed by PACA Section 499e on December 5, 1984. Upon receipt of notice of Debtor's delinquencies, Defendant initiated its own investigation of Debtor's operations, and concluded that Debtor had violated PACA Section 499b(4) by its failure to pay its produce creditors on a timely basis. On March 14, 1985, Defendant filed an administrative complaint against Debtor, seeking denial of Debtor's post-bankruptcy license application and imposition of sanctions in response to what Defendant termed willful, flagrant and repeated violation of the provisions of PACA. A hearing was scheduled before an administrative law judge for the morning of May 8, 1985 on Defendant's complaint.

On April 30, 1985, Debtor commenced this adversary proceeding, alleging that Defendant's complaint sought, in effect, to shut down Debtor's operations altogether and thereby effectively preclude Debtor's attempt to reorganize under Chapter 11. Debtor characterized the filing of the administrative complaint as a violation of the automatic stay of 11 U.S.C. § 362, and requested this Court to enjoin Defendant from proceeding further absent an order modifying the stay. Hearings were held in chambers on May 1, 1985 and again on May 7, 1985, and various compromises were suggested by Debtor and by the Court.

Upon Defendant's refusal to entertain such suggestions, this Court reluctantly concluded that it is without authority to enjoin Defendant from going forward with its administrative proceedings, notwithstanding the clearly deleterious effect such proceedings will have upon the Debtor's prospects for successful reorganization.

## DISCUSSION

As Debtor has suggested in its memoranda filed with this Court, Defendant's dogged determination to proceed with its administrative complaint has the potential to interfere with and threaten the growth of assets of the estate, and might conceivably destroy Debtor's ability to pay any dividends to its creditors. Debtor finds in this possible result ample reason to invoke the stay of Bankruptcy Code Section 362(a) to protect such assets for the benefit of the creditors, a position with which the unsecured creditors committee is entirely sympathetic. Anticipating that Defendant would seek to include its administrative proceedings within the scope of the exceptions to the stay set forth in Section 362(b)(4), Debtor seeks to distinguish such proceedings from the police or regulatory powers exempted from the stay. Citing *Missouri v. The United States Bankruptcy Court*, 647 F.2d 768 (8th Cir.1981), Debtor argues that an administrative proceeding to impose sanctions under PACA is not an action to enforce and protect the health, welfare, morals, and safety of the community, but instead is an enforcement proceeding that directly conflicts with the control by this Court of property of the estate. Similarly, Debtor looks to *Compton Corporation v. United States Department of Energy*, 40 B.R. 880 (Bkrtcy.N.D.Tex. 1984), in which this Court enjoined the Department of Energy from proceeding with administrative sanctions against the Debtor therein, for the proposition that this Court has the authority, under Code section 105, to prevent an administrative agency from interfering with assets of the estate. In response, Defendant distinguishes *Compton* and *Missouri, supra*, on the basis that

both cases involved actions by governmental entities to take property of the estate and redistribute it to creditors outside the context of the Bankruptcy Code, a situation not present here. Defendant herein has pursued a course of action which may preclude further growth of Debtor's assets, but no attempt has been made by the regulatory authority to remove the estate's assets for redistribution to others. Other authority cited by Debtor may be similarly distinguished. In *United States v. Johns-Manville Sales Corporation,* 18 Environ. Rpt.Cases (BNA) 177 (D.N.H.1982), the Court determined that the automatic stay of § 362 precluded regulatory authorities charged with protecting the environment from forcing a debtor to cease depositing certain wastes on land located in New Hampshire, as the "regulatory liability" arose prior to the petition for relief. Debtor insists the case at bar presents similar circumstances, apparently overlooking Debtor's continued, post-petition operation without a license in violation of PACA. While the Secretary's interest was obviously piqued by Debtor's pre-petition defaults with respect to obligations owed to produce creditors, it was made clear during argument and in the Secretary's memorandum that the Department regards its action as prophylactic rather than remedial, i.e., the proceedings contemplated by the Secretary are intended to protect future produce suppliers rather than to punish Debtor for the latter's pre-petition defaults. The Court further notes the absence of any provision in the Bankruptcy Code permitting environmental authorities to proceed notwithstanding the filing of a petition for relief, whereas the Secretary is expressly authorized by Code § 525 to proceed under the licensing provisions of PACA. Both *Johns-Manville* and *Compton, supra,* are distinguishable on this point.

■ This Court is sympathetic to Debtor's efforts to invoke Section 362(a) for the protection of the estate and for the benefit of creditors. It is clear, however, that the actions taken by Defendant with respect to Debtor's ability to continue operations are permitted by the Bankruptcy Code. Section 525(a) of the Code states that

> *Except as provided in the Perishable Agricultural Commodities Act, 1930* .... a governmental unit may not deny, revoke, suspend or refuse to renew a license ... to a person that is or has been a debtor under this Title ... solely because such bankrupt or debtor ... has not paid a debt that is dischargeable in the case under this title....

11 U.S.C. 525 (emphasis added).

■ Debtor seeks to explain this clear reference to PACA by noting that it permits Defendant to discriminate but not to proceed in violation of the automatic stay. By necessary implication, Section 525 states that this governmental unit, i.e., the Department of Agriculture, does have the right to refuse to renew a license simply because the applicant is a debtor in bankruptcy. As the Sixth Circuit stated in *Melvin Beene Produce Company v. Agricultural Marketing Service,* 728 F.2d 347 (6th Cir.1984),

> The Secretary is authorized, under 7 U.S.C. 499h(a), to revoke a PACA license for flagrant or repeated violations of Section 499b ... Beene went into bankruptcy after failing to pay for the ... perishable produce. *This does not, however, have any effect on the Secretary's power to revoke Beene's license ... Congress specifically amended Section 525 of the 1978 Bankruptcy Law in order to authorize continuation of the Secretary's license revocation authority under PACA when the violations involve debts dischargeable in bankruptcy.*

728 F.2d at 351 (emphasis added). Although *Beene* arose in the context of judicial review of an administrative finding rather than an application to enforce the automatic stay, the import of Section 525 as construed is clear. The mere filing of a bankruptcy petition does not prevent the Secretary of Agriculture from discharging his or her statutory duties under PACA, one of which is denial of a license to a financially insecure applicant.

Debtor notes what appears to be an internal inconsistency between sections 525 and 362, and suggests that Defendant may be able to proceed with its administrative action only if this Court first orders that the stay be modified. While attractive, this argument must nonetheless be rejected. In *Marvin Tragash Company v. United States Department of Agriculture*, 524 F.2d 1255 (5th Cir.1975), the debtor was a produce seller with a valid license. Just prior to its filing of a petition for arrangement under Chapter XI of the Bankruptcy Act, it had ordered and received, but failed to pay for, several loads of produce. An order confirming the debtor's plan was approved and entered on the same date the debtor's license expired under PACA section 499d. Shortly thereafter, the Department of Agriculture commenced administrative proceedings against the debtor, and ultimately found the debtor had committed willful, flagrant, and repeated violations of PACA. The debtor's license application was denied, and penalties were imposed. The debtor argued that the Department's actions represented a violation of the automatic stay, as no order lifting stay had been obtained from the bankruptcy court. The Fifth Circuit disagreed, and cited with approval *Zwick v. Freeman*, 373 F.2d 110 (2d Cir.1967), *cert. den.* 389 U.S. 835, 88 S.Ct. 43, 19 L.Ed.2d 96 (1967).

"The measures which petitioners object to in the Commodities Act would seem, to some extent, to conflict with the policy of the Bankruptcy Act. They prevent petitioners from shortly making a fresh debt-free start in the industry in which they had been earning their livelihood, although they are entirely free, as far as the challenged statute is concerned, to enter any other occupation or business which appeals to them. Nevertheless, in the light of the purposes of the Commodities Act and the clearly recognized need to have financially responsible persons as licensees ... the extent of encroachment of the Commodities Act upon the goals of the Bankruptcy Act cannot be regarded as unconscionable or excessive." ... 373 F.2d at 116–7 ... We agree with the Second Circuit that ... an exemption for bankrupts would be damaging to the congressional goal that only financially responsible persons should be engaged in the perishable agricultural commodities industry. Although this goal does conflict to some extent with the goal of the Bankruptcy Act, the conflict is not unconscionable, excessive, or irreconcilable.

524 F.2d at 1257–58. It is therefore apparent that to the extent there is a conflict between the provisions of the Code and PACA, this Court is compelled by virtue of the Fifth Circuit's ruling in *Tragash* and the necessary implication of Bankruptcy Code section 525 to deny Debtor's application.

It should also be noted that PACA performs for the produce industry the function performed by the Packers and Stockyards Act, 7 U.S.C. 196, for the packing industry, and that Congress has clearly indicated that courts could look to precedents established under the latter for guidance as to the former. *See* H.R.Rep. No. 98–543, 98th Cong., 1st Sess. 12, reprinted in 1984 U.S. Code Cong. & Ad.News 405, 415. The issues raised by Debtor with respect to PACA were addressed by the district court with respect to the Packers and Stockyards Act in *In re Northern Boneless Meat Corporation*, 9 B.R. 27 (S.D.N.Y.1981). There the bankruptcy court had enjoined the Secretary of Agriculture from prosecuting an administrative proceeding against the debtor for violations of the Act, on the grounds that the administrative action encroached upon the exclusive jurisdiction of the bankruptcy court. The debtor had asserted before the bankruptcy court that the automatic stay absolutely precluded any such action by the Department of Agriculture unless leave of court was first obtained. The bankruptcy court had relied upon its general equitable powers, as permitted by the predecessor to Code section 105, to issue the injunction. On appeal, the district court held that neither the automatic stay of Code section 362 nor the general equitable powers of the court under section 105 authorized an injunction against the

Department's administrative proceedings. The court noted that the equitable powers of the bankruptcy court were intended to be used to preserve the assets of the estate, and that where the integrity of the estate was not threatened, the bankruptcy court had no power to enjoin. The court also intimated that the action by the Secretary came within the situation contemplated by the exception to the stay set forth in 11 U.S.C. 362(b)(4). Accordingly, the bankruptcy court's order enjoining the Department from proceeding was reversed. *See In re Farmers & Ranchers Livestock Auction, Inc.,* 46 B.R. 781, 796 (Bkrtcy.E.D.Ark.1984).

This Court is also aware of the policy considerations implicit in the jurisdictional grant of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353 (1984) as set forth in the removal provision, 28 U.S.C. § 1452(a). This statute specifically renders non-removable any proceedings before the United States Tax Court and other civil actions by governmental units to enforce police and regulatory powers. "Congress deemed the public policy underlying these exceptions to outweigh removal." 1A J. MOORE, MOORE'S FEDERAL PRACTICE ¶ 0.171 at 716 (2d ed. 1984). Although the case at bar does not involve removal of a case from another forum, the principle of noninterference expressed in the removal provisions reinforces this Court's conclusion that it is without jurisdiction to enjoin the pending administrative proceedings. As this Court has noted, the Secretary is essentially attempting to enforce his regulatory authority. Such actions are permitted by § 362(b)(4) and beyond the scope of this Court's injunctive powers. *In re Northern Boneless Meat Corporation, supra; In re Farmers & Ranchers Livestock Auction, Inc., supra* at 796. Had a removal application been filed by the Debtor, this Court could not, under § 1452(a), have entertained the action. It is clear that this Court is similarly without power to enjoin these proceedings.

As stated earlier, this Court is aware of the implications of its decision. Should the administrative proceedings achieve their expected result, Fresh Approach may find its corporate back to the wall, and reorganization may become an impossibility. It is unfortunate that the Department of Agriculture feels it must cling obstinately to a policy which may well bring about the demise of what might have been a viable entity, given the time to catch its breath and institute its plan. Nonetheless, this Court must operate within the constraints of the law, and there is no question that the law supports the position of the Secretary. The express authority in Code section 525 is a clearly defined exception inserted by Congress to the "fresh start" otherwise available to a debtor in bankruptcy. To apply the automatic stay of section 362, or to enjoin the administrative proceedings under section 105, would unfortunately be inconsistent with section 525 of the Code and would trample the plain Congressional intent that the Secretary have the ability to protect the agricultural industry from insolvent participants. Accordingly, this Court must hold that neither section 362 nor 105 are available to prevent the Secretary from proceeding, and that the Debtor's application for a temporary restraining order must be denied.