**In re David HOPKINS and Mary Hopkins, Debtors.**

**Bankruptcy No. ED 85–38M.**

United States Bankruptcy Court, W.D. Arkansas, El Dorado Division.

Aug. 5, 1986.

---

Jack W. Dickerson, Pine Bluff, Ark., for debtors.

A.L. Tenney, Little Rock, Ark., Trustee.

Joseph A. Strode, Pine Bluff, Ark., for Bank of Bearden.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

On September 24, 1985, a hearing was held on the debtors' motion to cite the Bank of Bearden (Bank) and Mr. Ricky Green (Mr. Green), President of the Bank, for contempt for violation of 11 U.S.C. § 525, the debtor discrimination statute.

The Court has jurisdiction to hear this matter as a core proceeding. 28 U.S.C. § 157(b)(2)(0). The following constitutes the Court's findings of fact and conclusions of law as required by Bankruptcy Rule of Procedure 7052.

## FACTS

Mary Hopkins (debtor) had been a part-time employee of the Bank since 1972. The debtor was often called upon by the Bank to fill in for employees who were vacationing and on other occasions when the Bank needed some extra help. The Vice President of the Bank, Mr. Ed Pascal (Mr. Pascal), described the debtor as "a conscientious, faithful employee, honest and trustworthy." Other officers of the Bank concurred in this opinion of the debtor.

On March 27, 1985, the debtor was asked by the Bank to interview for a part-time position which could possibly turn into full-time employment. The debtor accepted the part-time position and began work for the Bank on Mondays and Fridays and on every third day of each month. The debtor

worked in this capacity through the month of April 1985.

In late April, the debtor was approached by Mr. Pascal and Mr. Ken Riley (Mr. Riley), Executive Vice President of the Bank, about a full-time position with the Bank. The facts surrounding this meeting are in dispute. The debtor's recollection of the meeting was that two positions at the Bank were open. One position was for a teller, and one was for a backup computer operator. Witnesses for the Bank recalled that only one position combining teller services and backup computer operator services was open. All parties agree that the salary was to be negotiated at a later date. The debtor discussed this offer with her husband and subsequently accepted the full-time position. The Bank disputes that the debtor was ever hired in a full-time capacity and claims that the debtor turned down the Bank's offer because it involved not only being the teller, but a backup operator on the Bank's computer.

On April 29, 1985, the debtor and the debtor's husband, David Hopkins, filed a voluntary joint petition under chapter 13 of the United States Bankruptcy Code. On May 3, 1985, the debtor on her own initiative told Mr. Riley that she had filed bankruptcy. Mr. Riley informed the debtor that he had heard from a customer that her bankruptcy had been filed. The debtor testified that Mr. Riley "gave me a pep talk. He told me to hold my head up and not let it get me down, and he said I don't see where this has anything to do with your job." At this point, the debtor told Mr. Riley that she wanted to accept the full-time teller position. Since customers were already waiting in line, Mr. Riley and the debtor decided to discuss salary at a later date. The debtor immediately went to work as a teller after her meeting with Mr. Riley.

On the afternoon of May 3, 1985, the debtor decided to personally inform Mr. Green of the bankruptcy petition. The events of the debtor's meeting with Mr. Green are in dispute. The debtor's recollection of the meeting was that Mr. Green informed her that the Bank had a policy to "let go" any employee filing bankruptcy. There were discussions about another employee that the Bank had "let go" after the filing of bankruptcy, and also a discussion about a Bank employee who had been charged and acquitted of a theft, but who remained an employee of the Bank. The debtor recalls that no mention of the words resign or resignation were used in that meeting. The debtor left the meeting with the distinct impression that she had been fired.

The Bank's position is that the debtor voluntarily resigned from her "temporary" position after disclosing the fact that she had filed bankruptcy. Mr. Green testified that he conversed with the debtor "about what was best for her and what was best for the Bank. I asked her, or suggested to her, that it might be best for her in a small town environment, and better for the Bank, that she might go to Ken [Mr. Riley] and tell him that she didn't want to work any longer at this point. It was not a permanent segregation from the Bank, but at that point I felt it was best for both parties." Mr. Green further stated that he felt that way "because of the integrity factor I think in the Bank that fact that this particular customer, you know that brought it to our attention had been filed on, and he would be asked to make his deposit at that window and I think that relationship would have been strained at best."

The Monday following the debtor's meeting with Mr. Green, the debtor approached Mr. Riley to thank him for his congenial attitude toward her during the final days of her employment at the Bank. The debtor stated that Mr. Riley said that "Ricky [Green] hated to do it because y'all had been friends for a long time."

## ISSUES

### I

■ 11 U.S.C. § 525(b) provides in part that a private employer may not terminate the employment of, or discriminate with

respect to employment against, an individual who is a debtor solely because the debtor filed bankruptcy. The issues presented are whether the debtor was employed by the Bank and whether the debtor was terminated or voluntarily resigned.

The testimony of the Bank officers substantially tracked the debtor's testimony except for whether the debtor was a permanent or temporary employee, and whether the debtor was terminated or voluntarily resigned. In light of the clear language of subsection 525(b), it is immaterial whether the debtor was a temporary or a permanent employee. In either case, the Bank would be barred from terminating her solely because she had filed bankruptcy. However, the Court is convinced that the debtor was offered, hired and worked, for at least one day, as a permanent employee and teller of the Bank. The debtor is a credible witness, and her testimony was undisputed that she began a new duty as a teller for the Bank on May 3, 1985.

The Court is further convinced that the debtor did not voluntarily resign as the Bank suggests, but was terminated from her employment by the Bank. The fact that the Bank officer chose to discuss this delicate matter in oblique terms does not alter the substance of his actions. The debtor indicated that she had, at least in her mind, no alternative to leaving her job. A voluntary resignation, as the Bank suggests, by a chapter 13 debtor would be disastrous to a chapter 13 reorganization which requires income of the debtor to fund a repayment plan.

## II

The next issue is whether the filing of the chapter 13 bankruptcy was the sole reason for the termination of the debtor by the Bank. *See* 11 U.S.C. § 525.

■ 11 U.S.C. § 525(b) prohibits discriminatory termination by a private employer. An essential element of proof of Section 525(b) discrimination is that either the insolvency, the filing of bankruptcy or the discharge of a debt is the sole reason for discrimination. *In re Helms*, 46 B.R. 150,

154 (Bkrtcy.E.D.Mo.1985) (FHA loan denied debtors for reasons other than bankruptcy); *In re Fasse*, 40 B.R. 198, 201 (Bkrtcy. D.Colo.1984) (suspension or revocation of real estate license because of debt discharge is prohibited); *Matter of Alessi*, 12 B.R. 96, 4 C.B.C.2d 1003, 7 B.C.D. 1037, 1039 (Bkrtcy.N.D.Ill.1981) (no 11 U.S.C. § 525 violation because horse racing permit was denied on grounds other than filing); *In re Hinders, Jr.*, 22 B.R. 810, 9 B.C.D. 655, 657 (Bkrtcy.S.D.Ohio 1982) (suspension of drivers license not based solely on discharge of an automobile accident related judgment); *Matter of Larry Rose*, 23 B.R. 662, 7 C.B.C.2d 909, 9 B.C.D. 885, 888 (Bkrtcy.D.Conn.1982) (debtor did not sustain burden of proving that this loan application was denied solely because of his chapter 13 bankruptcy).

Mr. Green was the only employee who expressed any potential concern for the debtor remaining as an employee of the Bank. When asked whether the Bank was disadvantaged by employing a bankrupt employee, Mr. Green expressed concern for the public's perception of the Bank employing a teller who has filed bankruptcy. The following testimony was given by Mr. Green.

THE COURT: Mr. Green, do you consider it to be to the disadvantage of the Bank to have an employee who is under a bankruptcy proceeding?

THE WITNESS: Well the point was, your honor, that she was a teller and my contention at that point at even making a suggestion to Mary was that our information was gained one from one of the customers and it makes you realize the awkwardness of handling those relationships and it being a small town maybe works against us a little bit in that respect. Yes, sir, I honestly felt like that I was doing both of us a favor by suggesting that she not work for a while, and remember that's what I suggested to her, not work for a while, we never said, you'll never work again.

THE COURT: So it would be bad for customer relations to have someone employed in the Bank who is in bankruptcy?

THE WITNESS: Well whether that be an imposition because I think that the mutual respect that you have for the integrity level of the employees, or maybe integrity is not a good word, but the credibility when I am the auto parts man that comes in to make my deposit, I'm not making those payments and whether he has any right or not is beside the point. It is a real factor I think. We couldn't afford the luxury of moving Mary to a quote unexposed area for that. So those were our feelings for making the suggestion. Mary had indicated to me that she would be paid out of bankruptcy in six months and we all thought we were talking about a temporary thing. I thought with our past friendship that we could discuss it and reach a mutual beneficial—

THE COURT: You were worried that someone who is under pressure economically would be more tempted than other Bank employees to commit a defalcation?

THE WITNESS: I think that's a factor, yes.

THE COURT: That's a legitimate factor?

THE WITNESS: Yes, sir.

THE COURT: Did you feel that way about Mary?

THE WITNESS: I would think it's my responsibility to look at those situations and try to remove myself as much as I can from those quote friendships and that's what made it difficult, yes sir.

THE COURT: And you did consider that?

THE WITNESS: I think I would be remiss in my responsibilities if I didn't consider it with any employee of the Bank.

THE COURT: The customer that brought this information about Mary, was he angry at the Bank over the fact that Mary was an employee and had filed bankruptcy on him?

THE WITNESS: Judge Mixon, I didn't talk to him personally I just know that he brought it in and, of course, I've known him for a number of years.

THE COURT: He told someone else who told you?

THE WITNESS: Yes, sir.

THE COURT: Well, did you ever, before you had the conversation with Mary, talk with anyone who expressed some—or anger with the fact over having Mary as employee because of bankruptcy?

THE WITNESS: Prior to that?

THE COURT: Prior to your conversation with her, on the third of May?

THE WITNESS: No sir.

THE COURT: But that was a concern?

THE WITNESS: Yes sir. Hopefully, we try to anticipate problems.

■ The debtor was represented to the Court as an honest and well-respected friend and Bank employee. Depositors of the Bank in the small town of Bearden knew the debtor and knew of her long term Bank employment. With these present factors, the fear of Mr. Green for public outrage of the debtor's continued employment is not justified. If an employer were allowed to terminate an employee upon the premise of anticipated destruction of public relations, 11 U.S.C. § 525(b) would no longer offer any protection for the debtor employee. An employer could always avoid this subsection by claiming an anticipated loss of public confidence by allowing a debtor to remain employed. If unwarranted firings were allowed, the policy of a fresh start for the debtor would be frustrated. *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *In re Begley*, 46 B.R. 707, 715 (D.C.E.D.Pa.1984), *aff'd*, 760 F.2d 46 (3rd Cir.1985). *In re Parkman*, 27 B.R. 460, 8 C.B.C.2d 764 (Bkrtcy.N.D.Ill.1983).

■ Actually, Mr. Green did not express any concern for the debtor's possible dis-

honesty, but only suggested that he would be dilatory in his duties as President if he did not reflect upon any debtor employee's honesty or proneness to become dishonest. In the debtor's case all facts indicate that the debtor was the type of employee that any concern for a defalcation would be unreasonable. Further, there was no evidence of poor job performance or employee misconduct which might justify dismissal. *See In re Terry,* 7 B.R. 880, 3 C.B.C.2d 517, 7 B.C.D. 21 (Bkrtcy.E.D.Va.1980). The circumstances surrounding the debtor's termination clearly establish that the decision to fire the debtor was based solely on her bankruptcy filing.

## III

11 U.S.C. § 525 of the Bankruptcy Reform Act of 1978 contained only the language of what is now 11 U.S.C. § 525(a) which prohibits employment discrimination by a governmental unit solely because of the debtor's insolvency, bankruptcy, or nonpayment of a dischargeable debt. The legislative history of 11 U.S.C. § 525 indicates that this section codifies the decision in *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). *See Wilson v. Harris Trust and Sav. Bank,* 777 F.2d 1246 (7th Cir.1985). 11 U.S.C. § 525 as it appeared in the Bankruptcy Reform Act of 1978 provided no remedy for a violation of this section. The present form of section 525, 11 U.S.C. § 525(a), also provides no remedy for its violation. Violations of and alleged violations of 11 U.S.C. § 525 and 525(a), governmental discrimination, have resulted in a variety of remedial awards by courts and requests by plaintiffs. *In re Fresh Approach, Inc.,* 49 B.R. 494, 13 B.C.D. 5 (Bkrtcy.N.D.Tex.1985) (debtor sought to enjoin Department of Agriculture from continuing proceedings to deny debtor's produce license application); *In re Helms,* 46 B.R. 150 (Bkrtcy.E.D.Mo.1985) (injunction sought by debtor to prevent eviction, debtor sought findings that he be qualified for a term loan, considered for a term loan and given a term loan and that the V.A.'s refusal to make loan be found discriminatory); *In re Island Club Mari-*

*na, Ltd.,* 38 B.R. 847 (Bkrtcy.N.D.Ill.1984) (county was constrained to consider the consequences of any future actions which it might take against the debtor in regard to building permits); *In re Aegean Fare, Inc.,* 35 B.R. 923, 929, 10 C.B.C.2d 11 (Bkrtcy.D.Mass.1983) (the court admonished the governmental agency that "appropriate sanctions exist for the violation of this section"); *In re Rath Packing Co.,* 35 B.R. 615, 9 C.B.C.2d 1295, 11 B.C.D. 595 (Bkrtcy.N.D.Iowa 1983) (finding a violation of § 525, court reversed and found null and void the action of the creditor against the debtor which was the revocation of debtor's self-insurer status); *In re William Tell II, Inc.,* 38 B.R. 327, 11 C.B.C.2d 235 (N.D.Ill.1983) (affirmed the bankruptcy court award ordering renewal of debtor's liquor license because original license was terminated in violation of section 525); *In re Douglas,* 18 B.R. 813, 6 C.B.C.2d 468, 8 B.C.D. 1233 (Bkrtcy.W.D.Tenn.1982) (permanent injunction sought by debtor to prevent cancellation by insurer of postpetition insurance policy); *In re Heaven Sent, Ltd.,* 50 B.R. 636 (Bkrtcy.E.D.Pa.1985) (debtor sought compensatory and punitive damages and attorney fees for cancellation of post petition insurance); *In re Ohning,* 57 B.R. 714 (Bkrtcy.N.D.Ind.1986) (injunction sought pursuant to 11 U.S.C. § 525 to prevent retaliatory action against debtor for filing bankruptcy); *In re Johnson,* 28 B.R. 406 (Bkrtcy.W.D.Pa.1982) (university ordered to give debtor access to diploma and transcript after a violation of § 525 was found); *In re Barbee,* 14 B.R. 733, 5 C.B.C.2d 481, 8 B.C.D. 283 (Bkrtcy.E.D.Va. 1981) (injunction sought to prevent private employer from firing debtor employee); *In re Terry,* 7 B.R. 880, 3 C.B.C.2d 517, 7 B.C.D. 21 (Bkrtcy.E.D.Va.1980) (plaintiff debtor sought payment of back wages, sanctions, restoration of employment and damages for alleged § 525 violation). Presumably these remedies awarded are derived from 11 U.S.C. § 105(a) which grants the bankruptcy court the power to enforce provisions of the Bankruptcy Code. *See In re Douglas,* 18 B.R. at 815; *In re Fresh*

*Approach, Inc.,* 49 B.R. at 498; *In re Fasse,* 40 B.R. 198 (Bkrtcy.D.Colo.1984).

Congress extended the discriminatory provisions of 11 U.S.C. § 525 in the Bankruptcy Amendment and Federal Judgeship Act of 1984 to prohibit private employer discrimination against individuals for two of the restrictions placed on governmental units: (1) termination of employment; and (2) discrimination against an employee. 11 U.S.C. § 525(b). Once again Congress chose not to provide a specific remedy for a section 525(b) violation but rather leave remedial requests to the innovative debtor's attorney and enforcement to the bankruptcy courts. At present, there are no reported cases addressing a violation of or a remedy for a violation of 11 U.S.C. § 525(b).

■ The debtor has requested that the Bank be held in contempt for violation of 11 U.S.C. § 525(b). Generally, a violation of a statute is not contemptuous.[1] Traditionally, contempt, civil or criminal, arises out of disobedience of a court order and is a remedy to coerce compliance with the court order. *Maggio v. Zeitz,* 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948); *Penfield Co. of California v. Securities & Exchange Com'n,* 330 U.S. 585, 67 S.Ct. 918, 91 L.Ed. 1117 (1947); 2 *Collier on Bankruptcy* ¶ 105.03 (15th ed. 1985).

■ The motion for contempt is denied without prejudice to debtor's right to seek appropriate relief under 11 U.S.C. § 105(a) within twenty days from the entry of this memorandum opinion and judgment of this same date.

IT IS SO ORDERED.

---

**1.** *But see* 11 U.S.C. § 362(h) which statutorily creates a remedy of contempt for a willful violation of § 362.